Filed 9/23/20  S.H. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

|  |  |
|---|---|
| S.H.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>      Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>      Real Party in Interest. | F081309<br><br>(Super. Ct. Nos. 19CEJ300313-1, 19CEJ300313-2, 19CEJ300313-3, 19CEJ300313-4)<br><br><br>**OPINION** |

**THE COURT**<sup>*</sup>

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Gary L. Green, Commissioner.

S.H., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

<sup>*</sup>      Before Detjen, Acting P.J., Meehan, J. and De Santos, J.

Petitioner S.H. (mother), in propria persona, seeks an extraordinary writ from the juvenile court's orders denying her reunification services under Welfare and Institutions Code, section 361.5, subdivision (b)(6)[1] and setting a section 366.26 hearing for October 5, 2020, as to her four children, now ranging in age from 20 months to eight years of age. Section 361.5, subdivision (b)(6) allows a juvenile court to deny reunification services for a parent whose child was adjudicated a dependent of the court due to "severe sexual abuse" to the child or the child's sibling. (§ 361.5, subd. (6)(A).) The perpetrator of the sexual abuse in this case was the children's father, Hugo R. (father), who did not file a writ petition.

Mother seeks a writ directing the juvenile court to vacate the section 366.26 hearing and return the children to her custody and dismiss dependency jurisdiction or order reunification services and visitation. Mother appears to argue the children were wrongfully removed from her physical custody. She does not, however, comply with the content requirements set forth in California Rules of Court, rule 8.452[2] for an extraordinary writ petition. Consequently, we dismiss the petition as facially inadequate for review.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in September 2019 after mother contacted the police to report that father digitally penetrated their five-year-old daughter's vagina and rectum. That morning her oldest son woke her up to get him ready for school. She did not know the time because she did not have a clock or phone. She noticed her five-year-old daughter (the daughter) was asleep on her knees with her buttocks in the air, which was not how she usually slept. She was clothed but not covered with a blanket,

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Rule references are to the California Rules of Court.

2

which was also unusual. The daughter complained of pain. Mother noticed father was curled up in a blanket, which was uncommon as he generally slept uncovered. Mother immediately confronted father and asked what he did to the daughter. He denied doing anything and assaulted mother by choking her and striking her several times in the face in front of the children. He threatened to harm her again if she pressed criminal charges. The detective noticed mother had visible injuries on the right side of her face.

Father told the detectives the daughter started making allegations about a month before that he sexually molested her. He claimed he suggested they get the daughter medically evaluated and contact law enforcement but mother refused because she did not want to get him in trouble. Father was arrested for felony domestic violence, oral copulation, sexual penetration and intimidating a witness.

A social worker from the Fresno County Department of Social Services (department) responded to assist with the children and was briefed by a detective on scene. The parents were undocumented immigrants from Mexico and lived on a farm in multiple trailers with the children. There was no running water, electricity or food for the children. The children were dirty and some appeared to be underweight. Mother contacted emergency services after seeing father insert his finger into the daughter's vagina. Mother claimed it was the first time she had ever seen him touch any of the children in a sexual or inappropriate manner. The daughter said father digitally penetrated her vagina and rectum and had done it before but refused to talk about the prior incidents. A nurse conducted a visual exam and noticed redness around her rectum that was not associated with poor hygiene. She also noticed that her rectum was dilated, which she attributed to penetration.

Mother reported that father was verbally and physically abusive to her but she had never reported it to law enforcement. Mother was arrested earlier in the year for domestic violence against father but the charges were dropped.

3

The social worker inspected the interior of the family home, which was very hot and smelled of urine, trash and body odor. The floors in all the rooms were black and it appeared they had not been cleaned or swept in months. There was dirt, old food and drinks on the floor. There were cockroaches, ants and other bugs crawling on the walls and floors and in the cabinets. A few rats ran across the living room floor and there was rat feces on the floor in most of the rooms. The only food in the home was a bag of dried pinto beans in the refrigerator and grapes in the freezer. The refrigerator was filthy with cockroaches crawling inside. All six family members slept together on two twin urine-soaked and stained mattresses on the living room floor with no sheets or blankets. There was no running water and the bathroom had a very strong smell of urine and feces. The kitchen counter and sink had dirty dishes and trash in it. The only electricity was from an extension cord running from the neighbor's trailer. The children were dirty and needed a bath. The baby was very thin and small for her age. Her hair was matted, her onesie was dirty and she had dirt caked on her arms and legs. The daughter was wearing dirty clothes and was filthy when the detectives found her. They cleaned her up and gave her clean clothes to wear. Mother had no diapers, wipes, formula or a clean bottle for the baby. One of the detectives purchased baby supplies in order to feed the baby and change her diaper. There were no clean clothes in the home.

Mother admitted she stopped cleaning because father refused to work or help with the children. He worked only when he wanted to, kept the money he earned, and spent it on himself. He refused to give her his pay stubs without which she was unable to receive cash aid.

While speaking with the social worker, the seven-year-old spontaneously stated: " 'My mom knew because she would check if something was wrong, she would check for blood and stuff every day.' " He clarified that mother checked the daughter. He denied ever seeing any blood.

Mother tried to change the subject and would not directly answer the social worker when she asked if mother was aware father was molesting the daughter. The social worker told mother that father made a statement indicating mother had accused him before of touching the daughter. She also told mother the children reported she checked the daughter's underwear for blood, which mother denied. Mother noticed, however, the daughter and her seven-year-old brother began acting differently about two weeks before and did not want to be around father. The daughter hid every time she saw father and the seven year old told mother he did not love his father anymore.

The department took the children into protective custody and placed them in foster care. The department filed a dependency petition under section 300, subdivisions (b)(1) (failure to protect) and (d) (sexual abuse), alleging the parents neglected and failed to adequately provide for the children and that father sexually abused the daughter, and mother knew or reasonably should have known of the abuse and failed to protect her. A first amended petition was filed to include an additional count under section 300, subdivision (d) that the other three children were at risk of being sexually abused by father.

On September 6, 2019, the parents appeared for the detention hearing assisted by a Spanish interpreter. The juvenile court ordered the children detained pursuant to the first amended petition and ordered the department to offer mother parenting, substance abuse, mental health and domestic violence services. The court denied father visitation and set the jurisdictional hearing for October 3, 2019.

On September 17, 2019, social worker Leslie Spraetz met with mother. Mother said she wanted reunification services and needed stable housing. Spraetz gave her contact information for a women's shelter. Mother said she tried to take the children away from father when he was acting " 'crazy' " and she had no knowledge the daughter was being sexually abused before she reported it to the police.

On September 25, 2019, Spraetz met with the children separately at their foster home. The seven-year-old son said he witnessed his parents fighting a lot and father punched his mother. On the day of his father's arrest, he turned on the light and saw father touching the daughter on her private parts. Mother started screaming and then called the police. The daughter confirmed father put his fingers inside her, motioning to her vagina and anus. The four-year-old son (the son) disclosed that father touched his penis and put his fingers inside his rectum. The son was afraid of father and did not want to see him. The daughter also appeared to be afraid of father.

On October 3, 2019, the juvenile court continued the jurisdictional hearing to November 12 and set it as a combined jurisdictional/dispositional hearing (combined hearing). The court granted the department discretion to advance mother's visitation to extended visits with prior notice.

On October 30, 2019, Spraetz and other social workers met with mother to discuss the department's plan to recommend denial of reunification services to her under section 361.5, subdivision (b)(6) and several positive test results for methamphetamine. Mother said she first used methamphetamine the day after the children were removed from her. She also said her landlord told her a neighbor sexually molested the daughter. She did not report this information to the police because other people were around and she was afraid. She said she was not in a relationship with father but also stated she had ongoing contact with him. She did not believe he molested their daughter but believed her daughter. When told the son also disclosed being sexually abused by father, she cried and asked, " 'So, it did happen then?' " She appeared more hurt by the son's allegations than by the daughter's. She accused the daughter and the son of lying, stating father would not do that to their children. She also disclosed that she was visiting father in jail and using methamphetamine.

On November 5, 2019, the department filed a second amended dependency petition, adding an additional count under subdivision (b)(1), alleging mother tested

6

positive for methamphetamine and admitted ongoing substance abuse. It also added two counts under subdivision (d) that father penetrated the daughter's vagina with his penis and the son reported father digitally penetrated his rectum and fondled his penis under his clothing.

On November 12, 2019, at the continued combined hearing, county counsel asked the juvenile court to proceed on the second amended petition and deny the parents reunification services as recommended. The parents denied the allegations and requested a contested hearing. The court set a combined contested hearing for April 9, 2020.

On November 19, 2019, during a telephone conversation with Spraetz, mother said she did not believe father sexually molested the son. She believed the current caregivers did it. Mother accused the department of lying and asked for a new social worker.

During a meeting with Spraetz on January 31, 2020, mother disclosed she was still in a relationship with father, regularly visited him in jail and did not believe he sexually molested his two children. She wanted him to participate in parenting classes and other services that would improve their relationship. Spraetz counseled her about the danger of maintaining a relationship with someone who her children accused of sexually molesting them and explained the department was not willing to recommend reunification services for her given her relationship with father and ongoing drug use.

On March 2, 2020, father was released from county jail on felony probation. A week later, the caregiver reported the children saw him hanging around the visitation center while they were visiting mother. Spraetz discovered there was a criminal protective order prohibiting him from having contact with the children.

On March 17, 2020, Spraetz spoke to Gabriela Garcia, mother's substance abuse counselor. Garcia had not recently tested mother for drugs but mother was actively participating in group sessions. Mother mentioned that father had recently gotten out of jail. Mother mentioned many times that he was innocent and she did not believe he sexually molested her children.

The department recommended the juvenile court sustain the allegations in the second amended petition and deny both parents reunification services under section 361.5, subdivision (b)(6). Mother did not believe father molested the children and maintained contact with him. The department was concerned mother would not protect the children from their father.

On May 14, 2020, the juvenile court convened the combined contested hearing. Father's attorney informed the court she had not heard from father. Mother's attorney stated mother was willing to submit on jurisdiction if she was provided reunification services. The court continued the hearing to June 19, 2020.

On June 19, 2020, the juvenile court found that father's whereabouts were unknown. Mother testified she did not suspect father was sexually abusing the children prior to September 3, 2019. She denied checking them for signs of blood. She did not remember saying the children lied about the sexual abuse. She believed the children were telling the truth. She visited father in jail because she was confused. She was not in a relationship with him and had not seen him since he was released from custody in March 2020. She wanted to participate in reunification services and believed she could protect the children from their father.

On cross-examination, mother was asked about a job application she gave Spraetz that listed father as her emergency contact. She did not have a sensible explanation. Mother denied seeing father at the visitation center during her visits and did not necessarily believe he was there. She did not tell him when she had visits at the visitation center and did not ask him to come to the center. She attended four child abuse sessions, three domestic violence sessions as a victim and four domestic violence sessions as a perpetrator. Her sobriety date was October 27, 2019. When questioned about testing positive for alcohol in January and February 2020, despite providing a sobriety date of October 2019, mother denied drinking alcohol but then remembered taking a nighttime medication in January 2020 and participating in a spiritual cleansing ceremony in

8

February 2020 that may have involved alcohol consumption. She could not remember the name of the person who performed the cleansing.

Spraetz, called as a rebuttal witness by the department, testified the children told their caregiver they saw father outside the visitation center right after he had been released from jail. They were terrified that he was going to get them. Mother denied knowing he was there. However, Spraetz did not know how father would have known where the visitation was since he had not had any contact with the department.

County counsel argued the factual allegations were not disputed and that it would not be in the children's best interests to provide the parents reunification services. Mother, she argued, had not proven herself to be protective and was barely engaged in domestic violence classes. Minors' counsel joined in county counsel's argument. Mother's attorney challenged the sexual abuse allegations that mother knew or reasonably should have known that the children were at risk of sexual abuse by father, pointing out that mother contacted the police and testified she did not suspect sexual abuse prior to that incident. Mother's attorney also cited mother's testimony she believed her daughter and son that father sexually abused them and asked the court to find reunification services would benefit the children. Father's attorney objected to denying father reunification services without any argument.

The juvenile court sustained the second amended petition in its entirety, ordered the children removed from parental custody and denied the parents reunification services as recommended. In ruling, the court stated mother's answers were evasive and inconsistent and her testimony was not credible. The court found Spraetz's credibility "intact." Regarding the sexual abuse allegations as to mother (counts d-4 and d-5), the court found she knew or reasonably should have known that the daughter and son were in danger of sexual abuse and failed to act given the children's consistent statements that father was abusing them and the fact that she was checking them for blood. As to the denial of services, the court found there was sufficient evidence of severe sexual abuse

and that mother would not benefit from reunification services or be protective. The court stated:

> "[M]other has started services[,] [b]ut I'm not sure that even with that it will be beneficial. One of her comments that stood out was that she said the classes will teach [her] how to protect her children so that this never happens again. The fact that she needs classes to do something as fundamental as protecting her children does suggest that she is not in a position and potentially could not be in a position to continue to protect her children.

> "The Court is also concerned about what appears to be a continuing relationship even when she understands the nature of these acts committed by the father. Moreover, of [additional] concern [are] statements attributed to her as early as March of 2020 that she did not believe the father committed these acts. Furthermore, there is some history and problems with her potential substances. The Court is concerned that she gave us the sobriety date yet ingested substances in February for a cleansing ceremony that she claims she did not know were alcoholic. That is of concern to the Court and that that is a remaining issue."

The juvenile court also found that providing mother reunification services was not in the children's best interest, stating:

> "The Court also finds that reunification services is not in the best interest of the minors. Again, with regards to the mother's current efforts and fitness, the Court does not find that she has made a sufficient progress to believe that the children would be protected. The gravity of the problems leading to dependency is severe. The Court does recognize from reporting that the mother appears to have a bond, but I have to balance that with the mother's apparent position with regards to the father.

> "I think the children have gone through a lot. They need stability and continuity. And based on the record before the Court, the Court does find that the bypass is supported, and the Court will go ahead and grant the Department's request to bypass the mother."

The juvenile court set a section 366.26 hearing and ordered a minimum of one supervised visit a month for mother and no visits for father.

10

**DISCUSSION**

Mother disputes evidence in the record regarding the circumstances which required the children's removal. Specifically, she contends she did have electricity and water and denies fighting in front of the children. She claims the house was dirty because she was cleaning and the fact that she called the police proves that she believed the daughter when she said father sexually molested her. Mother also asserts the daughter was examined by a physician and diagnosed with vulvovaginitis due to poor hygiene and that the detectives told her they would give her three days to clean her house and then return the children to her. She included with her writ petition discharge instructions for the care and treatment of vulvovaginitis apparently given to her by the nurse who examined the daughter on September 3, 2019. She also attached a certificate evidencing her completion of a nurturing parenting program. Neither of the attachments are contained in the appellate record.

Real party in interest contends mother's petition does not comply with the rule and should be dismissed as inadequate for review. We concur the petition is facially inadequate.

*Child Welfare Services Generally*

The purpose of dependency statutes is to "provide maximum safety and protection for children who are … being physically, sexually, or emotionally abused, being neglected, or being exploited and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child." (§ 300.2.)

When the juvenile court removes a child from parental custody at the dispositional hearing, it must provide reunification services to the child and the parents. (§ 361.5,

subd. (a).)  The purpose of providing reunification services is to "eliminate the conditions leading to loss of custody and facilitate reunification of parent and child.  This furthers the goal of preservation of family, whenever possible."  (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 478.)  However, subdivision (b) of section 361.5 exempts from reunification services " ' "those parents who are unlikely to benefit" ' from such services or for whom reunification efforts are likely to be 'fruitless.' "  (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120.)  The 17 different paragraphs set forth in subdivision (b) of section 361.5—which authorize denial of reunification services under various specific circumstances—are sometimes referred to as " 'bypass' " provisions.  (*Melissa R. v.  Superior Court* (2012) 207 Cal.App.4th 816, 821.)

Once it has been determined one of the bypass provisions applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' "  (*In re William B*. (2008) 163 Cal.App.4th 1220, 1227.)  Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court "shall not order reunification for [the] parent … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."  (§ 361.5, subd. (c)(2).)  "The burden is on the parent to … show that reunification would serve the best interests of the child."  (*In re William B.*, at p. 1227.)

"We review an order denying reunification services under [section 361.5] for substantial evidence.  [Citation.]  Under such circumstances, we do not make credibility determinations or reweigh the evidence.  [Citation.]  Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.'  [Citation.]  In doing so, we are mindful of the higher standard of proof required in the court below when reunification bypass is ordered."  (*Jennifer S. v. Superior Court*, *supra*, 15 Cal.App.5th at pp. 1121–1122.)  If there is substantial evidence to support the order, the appellate court must uphold the

order even if evidence could support a contrary holding. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 251.)

*Section 361.5, subdivision (b)(6)*

The juvenile court in this case denied mother reunification services under section 361.5, subdivision (b)(6). A denial of services is authorized under this statute where the court finds by clear and convincing evidence "[t]hat the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse … to the child, a sibling, or a half sibling by a parent …, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent .…" "A finding of severe sexual abuse, for purposes of this subdivision, may be based on, but is not limited to, sexual intercourse, … between the parent … and the child or a sibling … of the child … with the actual or implied consent of the parent …; or the penetration or manipulation of the child's, [or] sibling's … genital organs or rectum by an animate … object for the sexual gratification of the parent … with the actual or implied consent of the parent .…"

In determining whether services will benefit the child, the juvenile court must consider any information it deems relevant, including the specific act or omission comprising the severe sexual abuse, the circumstances under which the abuse was inflicted, the severity of the emotional trauma suffered by the child or the child's sibling, any history of abuse of other children by the offending parent, the likelihood the child could be safely returned to the parent's care within 12 months without continuing supervision, and whether or not the child desires to be reunified with the offending parent. (§361.5, subd. (i)(1)-(6).)

*Mother's Writ Petition is Inadequate*

The purpose of extraordinary writ proceedings is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings

13

issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452, which sets forth the content requirements for an extraordinary writ petition, requires the petitioner to identify the error(s) he or she believes the juvenile court made and to support each alleged error with argument, citation to legal authority, and citation to the appellate record. (Rule 8.452(b).) In keeping with rule 8.452(a)(1), we will liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother's writ petition is facially inadequate under the rule because she does not relate the evidence she disputes to a ruling that she asserts is error. The circumstances regarding the children's removal that mother now disputes were contained in the department's detention report which was entered into evidence without objection. Having failed to object, mother forfeits any contention on appeal that the evidence was improperly admitted. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20–21.) Further, mother does not challenge the critical findings that resulted in the juvenile court's order denying her reunification services; i.e., that she knew or reasonably should have known father was sexually abusing the daughter and son and she failed to act, that the sexual abuse was severe, that she impliedly consented to the sexual abuse and that providing her reunification services would not benefit the children.

Mother's claim she contacted the police does not negate evidence she reasonably knew and impliedly consented to the sexual abuse given evidence she was checking the children's underwear for blood. There is also evidence the daughter had accused father before of sexually molesting her and mother accused him of doing it "again" on the day

14

he was arrested. Nor does evidence the daughter had vulvovaginitis negate that she was sexually abused, given the daughter's statement that she was and the nurse's opinion after conducting a visual exam that she was sexually molested. Further, even if the diagnosis was relevant, we could not review it because it was not admitted into evidence for the juvenile court's consideration.[3] (*In re Zeth S*. (2003) 31 Cal.4th 396, 400.)

Finally, mother expresses her love for her children, which the juvenile court acknowledged. However, the court found that mother could not protect them, which the evidence supports.

We conclude mother's failure to assert juvenile court error renders her writ petition facially inadequate. Further, although not the basis for our decision, we would conclude substantial evidence supports the juvenile court's decision to deny her reunification services.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

---

[3] We cannot review mother's certificate of completion of the parenting program for the same reason.

15